UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLORA McLOUTH,

       Plaintiff,                                      Hon. Richard Alan Enslen

v.                                                     Case No. 1:07-CV-547

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age at the time of the ALJ's decision. (Tr. 30, 110). She successfully completed high school and worked previously as an assembler, machine tender, and industrial cleaner. (Tr. 131, 136, 139-41).

Plaintiff applied for benefits on May 30, 2002, alleging that she had been disabled since June 19, 2001, due to a lower back injury. (Tr. 110-12, 130). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 31-109). On December 6, 2005, Plaintiff appeared before ALJ Phillip Simon, with testimony being offered by Plaintiff, vocational expert, Gail Maron, and medical expert, Dr. Wendt. (Tr. 364-407). In a written decision dated March 22, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 22-30). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2004. (Tr. 22); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**RELEVANT MEDICAL HISTORY**

On September 15, 1997, Plaintiff participated in a consultive examination conducted by Dr. Edward Trachtman. (Tr. 173-80). Plaintiff reported experiencing lower back pain which radiated into her right leg. (Tr. 177). Plaintiff ambulated without difficulty. (Tr. 178). An examination of Plaintiff's lumbar spine revealed no evidence of hypertonicity, spasm, edema, "soft tissue changes," sacroiliac dysfunction, or restriction of motion. (Tr. 178). Straight leg raising was negative and Plaintiff exhibited "no pain with palpation." (Tr. 178). An examination of Plaintiff's lower extremities revealed "full functional strength." (Tr. 179). Dr. Trachtman concluded that Plaintiff "has no objective findings to support her subjective complaints." (Tr. 179). The doctor concluded that there existed "no reason why [Plaintiff] cannot do any and all work." (Tr. 179).

In January 2000, Plaintiff was diagnosed with cervical cancer. (Tr. 191-203). Plaintiff received radiation treatment over the course of the next several months. (Tr. 216-23, 326-47). Plaintiff returned to work as an assembler following her treatment. (Tr. 131, 323). An October 15, 2000 examination revealed "no evidence of recurrent disease." (Tr. 323-24).

On January 19, 2001, Plaintiff reported that she was "doing well," but experiencing "bouts of diarrhea approximately twice weekly." (Tr. 315).

An April 13, 2001 examination revealed "no evidence of recurrent cervical cancer." (Tr. 313).

On July 23, 2001, Plaintiff reported that "her diarrhea has resolved since she quit her job working at the factory." (Tr. 312).

An October 12, 2001 examination revealed "no evidence of recurrent cervical cancer." (Tr. 308-09).

4

A January 23, 2002 examination likewise revealed "no evidence of recurrence of her disease," but Plaintiff reported that she was experiencing "persistent nausea, vomiting, and occasional diarrhea." (Tr. 307).

On April 19, 2002, Plaintiff was examined by Dr. Poonputt Chotiprasidhi. (Tr. 208-10). Plaintiff reported that she was experiencing nausea, vomiting, and diarrhea. (Tr. 208). Given Plaintiff's treatment history for cervical cancer, the doctor recommended that Plaintiff participate in a colonoscopy and upper endoscopy examinations. (Tr. 209-10).

On May 13, 2002, Plaintiff completed a questionnaire regarding her activities. (Tr. 142-44). Plaintiff reported that she can walk for 30 minutes and experiences no difficulty climbing stairs. (Tr. 142). Plaintiff reported that she cooks, washes dishes, shops, cares for her pets, washes laundry, and performs child care. (Tr. 143). Plaintiff also reported that she watches television and plays computer games. (Tr. 144).

On June 24, 2002, Plaintiff participated in a colonoscopy examination, the results of which revealed "mild radiation proctocolitis."[1] (Tr. 300-01). Dr. Wendt testified at the administrative hearing as a medical expert and reported that Plaintiff developed colitis as a result of her cancer radiation treatments. (Tr. 395, 401-02). The results of an endoscopic examination, performed the same day, were "normal." (Tr. 302-03).

---

[1] Radiation colitis is "a manifestation of inflammation and damage to the colon and it is caused by radiation. It presents with spasm, cramping pain, diarrhea, mucous and blood in the bowel movements. It usually resolves on its own, but may leave some scarring that can infrequently cause later ulcers in the large intestine. In its worst form it can cause blockages of the intestine or fistulae. It is usually treated conservatively with antispasmodics and fiber. The acute phase may take 6 months to resolve and may wax and wane as it resolves."

Radiation Colitis, available at, http://www.oncolink.com/experts/article.cfm?c=2&s=37&ss=117&id=1843 (last visited on July 21, 2008).

A September 2, 2002 examination revealed "no evidence of recurrent cervical cancer." (Tr. 299).

On September 28, 2002, Plaintiff participated in a consultive examination performed by Dr. Amish Patel. (Tr. 239-41). Plaintiff reported that she was experiencing lower back pain which prevented her from performing "any type of manual labor for any length of time." (Tr. 239). Plaintiff reported that she can lift 20 pounds, sit or stand for 30 minutes, and walk for 60 minutes. (Tr. 239). She also reported that she was not taking any medication for her back pain. (Tr. 239).

An examination of Plaintiff's extremities was unremarkable. (Tr. 240). An examination of Plaintiff's dorsolumbar spine revealed slightly limited range of motion and "mild" muscle spasm. (Tr. 241). Straight leg raising was positive on the right. (Tr. 241). Plaintiff "walked normally" and was able to heel/toe walk and get on/off the examination table without difficulty. (Tr. 241). Plaintiff exhibited no motor or sensory impairment. (Tr. 241).

On March 3, 2003, Plaintiff was examined by Dr. Daniel Hamstra. (Tr. 296-97). Plaintiff reported that she was doing "well" and "continues to be fully functional." (Tr. 296). Plaintiff reported that she was experiencing diarrhea "approximately every 1-2 weeks." (Tr. 296). Plaintiff also reported that "the intermittent nausea that she was experiencing 1 year ago has improved considerably." (Tr. 296). The results of the examination were unremarkable and the doctor reported he observed "no evidence of disease." (Tr. 296).

Treatment notes dated October 22, 2003, indicate that Plaintiff was continuing to experience "loose stools." (Tr. 251). Plaintiff did not report how frequently she was experiencing such, however. (Tr. 251-54).

6

At the December 6, 2005 administrative hearing, Plaintiff testified that she "mainly" experiences diarrhea because of her "nerves" and when she gets "upset and stuff." (Tr. 376). Plaintiff reported that she experienced an episode of diarrhea that morning because she was "nervous" about the hearing, but that the last time she experienced diarrhea was "about a year ago." (Tr. 376). Plaintiff also reported that she experiences back pain "all the time." (Tr. 377). Plaintiff reported that she was not presently treating with a physician and was not taking any prescription medication for her back pain. (Tr. 381-83). Plaintiff testified that over-the-counter pain medication helps her back pain. (Tr. 383).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) radiation-induced colitis and gastroenteritis, (2) disc disease of the lumbosacral spine, and (3) non-malignant rectal polyps. (Tr. 24). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 24). The ALJ determined that despite these impairments, Plaintiff retained the ability to perform her past relevant work as an assembler. (Tr. 24-27). The ALJ further determined that even if Plaintiff were unable to perform her past relevant work that there existed a significant number of jobs which she could perform despite her limitations. (Tr. 27-28). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently, (2) she can sit, stand, and/or walk for six hours each during an 8-hour workday, (3) she can push/pull 20 pounds occasionally and 10 pounds frequently, (4) she can only occasionally use her right lower extremity to operate foot controls, (5) she can frequently balance, (6) she can only occasionally climb, stoop, or crouch, and (7) she must avoid exposure to vibrations, such as power tools. (Tr. 27). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

A vocational expert testified that if limited to the extent articulated by the ALJ's RFC determination, Plaintiff would still be able to perform her past relevant work as an assembler and machine tender. (Tr. 403-04). The vocational expert further testified that if Plaintiff were further limited in that she required the ability to alternate between sitting and standing every 30 minutes, she would not be able to perform her past relevant work, but that approximately 1,000 positions existed in the Lansing, Michigan area alone, and more than 375,000 positions existed nationally, which Plaintiff would be able to perform despite her limitations. (Tr. 404-06). This represents a significant

9

number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

a. The ALJ Properly Evaluated Plaintiff's Impairments

Plaintiff asserts that the ALJ erred by failing to find that her impairments satisfy the requirements of any impairment identified in the Listing of Impairments. Specifically, Plaintiff asserts that she meets Sections 1.04 and 13.00 of the Listing of Impairments.

To satisfy Section 1.04 of the Listings, Plaintiff must demonstrate that she suffers from a spinal disorder resulting in compromise of a nerve root or the spinal cord, with either (a) evidence of nerve root compression, (b) spinal arachnoiditis, or (c) lumbar spinal stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04 (2005). The ALJ specifically considered whether Plaintiff satisfied this particular Listing, concluding that she did not because "there is no neuropathy and no evidence of nerve root damage." (Tr. 24). This conclusion is supported by the record and Plaintiff has identified no evidence to the contrary. As the ALJ correctly concluded, the medical record contains no evidence that Plaintiff satisfies the requirement of this Listing. Moreover, Plaintiff's argument that her condition is "medically equivalent" to this Listing is unpersuasive, as the evidence of record fails to demonstrate that Plaintiff's back impairment is "equal in severity" to the criteria of this (or any other) listed impairment. *See* 20 C.F.R. § 404.1526 (2005).

Plaintiff also asserts that she satisfies the requirements of Section 13.00 of the Listing which concerns malignant neoplastic diseases. To satisfy this particular Listing, Plaintiff must demonstrate either (1) that her cervical cancer extended to the pelvic wall, lower portion of the

vagina, or an adjacent or distant organ; or (2) that her cancer was "persistent or recurrent" following treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 13.23 (2005). The record contains no evidence that Plaintiff's cancer extended to the pelvic wall, lower portion of the vagina, or an adjacent or distant organ. Moreover, as detailed above, Plaintiff's cervical cancer was successfully treated with no subsequent reoccurrences. Thus, substantial evidence supports the ALJ's determination that Plaintiff's impairments do not satisfy the requirements of this Listing.

      b.  The ALJ Properly Assessed Plaintiff's RFC

Plaintiff asserts that the ALJ's RFC determination is faulty because it failed to sufficiently account for her diarrhetic incontinence. The medical evidence reveals that while Plaintiff experienced radiation-induced diarrhea for a period of time following her cancer therapy, it had resolved long before the administrative hearing. As Plaintiff testified, she had experienced diarrhea only once in the previous year. Substantial evidence, therefore, exists to support the ALJ's RFC determination, specifically his decision not to include a limitation pertaining to Plaintiff's diarrhea, which by the time of the ALJ's decision was well under control.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 29, 2008  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge